## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

BRANDON SCOTT LAVERGNE              CIVIL ACTION NO. 6:13-2143
    LA. DOC #424229
VS.                                 SECTION P

                                                  JUDGE HAIK

LAFAYETTE PARISH SHERIFF'S OFFICE         MAGISTRATE JUDGE HILL

### <u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Brandon Scott Lavergne ("Lavergne"), proceeding in *forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 on June 27, 2013.  Lavergne is an inmate in the custody of the Louisiana Department of Public Safety and Corrections.  He is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana where he is serving two life sentences imposed by the Louisiana Fifteenth Judicial District Court for Lafayette Parish following his August 17, 2012 convictions for the murder of Michaela Shunick ("Shunick") and Lisa Pate ("Pate").  Lavergne names the Lafayette Parish Sheriff's Office as the sole defendant.

Lavergne alleges that following his July 5, 2012 arrest he was incarcerated at the Lafayette Parish Jail.  After being placed on suicide watch for two or three days, Lavergne was moved to protective isolation on the fourth floor of the jail, where the air conditioning was not working.  Lavergne was also not allowed to have his c-pap machine which he uses for sleep apnea.  Moreover, Lavergne alleges that for the first seven to ten days, he was not permitted reading, writing or religious  material, or access to television,

newspapers or the radio, and was not provided toothpaste and underclothing.  Lavergne also complains that for forty-two days he was not allowed outside recreation and when he was in the inside recreation area, he was fully restrained.  When Lavergne asked the social worker to be transferred to the general population, Lavergne was advised that even if he signed a waiver of protection, he would nevertheless remain in isolation until his trial.  Lavergne complains that the conditions in the jail "were torture and were a tool used to violate my 5th and 14th amendment rights in forcing me to accept a plea."  He additionally complains that these conditions violated his rights under the Eighth and Fourteenth Amendments.

During the time Lavergne was at the Lafayette Parish Jail, the chaplain visited Lavergne along with Pastor Tommy Faulk.  Lavergne complains that although he requested to see the chaplain, because the chaplain was an employee of the jail and he had previously invoked his right to remain silent, these visits violated "the spirit and purpose of the 5th amendment."

Lavergne also complains that the Lafayette Parish Sheriff's Office leaked evidence and false information about the murder cases to the media thereby constituting "libel and slander ."  He further complains that the totality of these actions"deeply damaged my rights to a fair trial and directly resulted in me being forced and coerced into pleading guilty to charges I was maintaining I was not guilty of."

By this action, Lavergne seeks actual and punitive damages.

This matter has been referred to the undersigned for review, report and
recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing
orders  of the Court.

## LAW AND ANALYSIS

On August 17, 2012, Lavergne pled guilty to two counts of first degree murder for
the murders of Shunick and Pate, with the stipulation that he be sentenced to life
imprisonment on each count.  In accordance with the plea agreement, Lavergne was
sentenced that date to life imprisonment on each count.  Lavergne did not directly appeal
his convictions or sentences.  Post-Conviction relief has not been granted.[1]  Moreover,
neither this or any other federal court has issued a writ of *habeas corpus*.

### I.  Screening

When a prisoner files suit in *forma pauperis* pursuant to 42 U.S.C. § 1983,  the
court is obligated to evaluate the complaint and dismiss it without service of process, if
the complaint is frivolous, malicious, fails to state a claim upon which relief can be
granted, or seeks monetary relief from a defendant who is immune from such relief. 28
U.S.C. § 1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990).

A claim is frivolous if it lacks an arguable basis in law or in fact.  *Gonzalez v.
Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998) *citing Siglar v. Hightower,* 112 F.3d 191, 193
(5th Cir. 1997).  A complaint is subject to dismissal for failure to state a claim if the

---

[1]This information was confirmed by communication with the Clerk of the Fifteenth Judicial
District Court and the Louisiana Third Circuit Court of Appeal.

allegations, taken as true, show the plaintiff is not entitled to relief. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see also Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). The plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Green v. Revel*, 2011 WL 165453, *1 (5th Cir. 2011) *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In his Complaint, Lavergne  has set forth specific facts which he claims entitles him to damages and he has pleaded his best case.  The facts alleged by Lavergne have been accepted as true for the purposes of this Report.  Nevertheless, Lavergne's damage claims are subject to dismissal for the reasons which follow.

## II. *Heck v. Humphrey*

Lavergne seeks monetary damages from the Lafayette Parish Sheriff's Office for actions and conditions which he contends forced him to enter a guilty plea to the murders of Pate and Shunick, and for alleged constitutional violations connected with the 2012 murder investigation and subsequent state criminal proceeding, which resulted in Lavergne's conviction for the murder of Shunick and Pate, for which Lavergne is serving two life sentences imposed by the Louisiana Fifteenth Judicial District Court for Lafayette Parish.

It is well established that to recover damages for an allegedly "unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness

4

would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the

conviction or sentence has been reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal authorized to make such determinations, or called into

question by a federal court's issuance of a writ of *habeas corpus* [under] 28 U.S.C.

§ 2254." *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383

(1994).  A claim for damages bearing that relationship to a conviction or sentence that has

not been so invalidated is not cognizable under § 1983.  *Heck*, 512 U.S. at  487, 114 S.Ct.

at 2372. The Supreme Court imposed this requirement on § 1983 plaintiffs in order to

avoid collateral attacks by plaintiffs on convictions against them that are "still

outstanding." *Id.* at 486, 114 S.Ct. at 2371.  Moreover, if judgment in favor of a civil

rights plaintiff would "necessarily imply the invalidity of his conviction or sentence,"

then the complaint must be dismissed unless the plaintiff demonstrates that the conviction

or sentence has already been invalidated.  *Id.*

      Lavergne's claims, if true, necessarily implicate the validity of his state court

criminal proceeding and the convictions and sentences imposed therein.  Lavergne does

not contend that his murder convictions or his life sentences have been reversed,

expunged, or declared invalid.  To the contrary, Lavergne admits that he is currently

serving his sentences for these convictions.  Moreover, there is no jurisprudence

establishing that these convictions  have been reversed, expunged, or declared invalid.

Furthermore, no federal court has issued a writ of *habeas corpus*.

While Lavergne argues that his murder convictions, and more specifically his guilty plea to the murder charges, and resulting sentences are invalid and unconstitutional, Lavergne stands convicted, and his convictions were, in part, allegedly the result of the alleged complained of illegal and unconstitutional actions and jail conditions of the defendant.  Thus, it is clear that if this court were to grant Lavergne the damages he seeks, that ruling would necessarily implicate the validity of Lavergne's convictions and sentences.  Accordingly, Lavergne's claims, which are directed at the validity of his 2012 criminal prosecution and resulting convictions and sentences, are barred by *Heck*.  The claims are not cognizable under 42 U.S.C. § 1983 at this time. These claims must therefore be dismissed with prejudice for failure to state cognizable claims.  *See Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).

### III. Jail Conditions

At the time of his incarceration at the Lafayette Parish Jail, Lavergne was a pretrial detainee and not a convicted prisoner. The constitutional rights of a pretrial detainee flow from the due process guarantees of the Fourteenth Amendment. *Hare v. Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (*en banc*) *citing Estelle v. Gamble*, 97 S.Ct. 285, 291 (1976).  *See also Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). When considering claims asserted by pre-trial detainees, the applicable standard depends upon whether the claim is directed to a general "condition of confinement" or to an "episodic act or omission." *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997) *quoting Hare,* 74 F.3d at

6

644.

Lavergne's complaints are best characterized as a "conditions of confinement claim." "A 'condition of confinement' case is a 'constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement.'" *Scott,* 114 F.3d at 53 *quoting Hare,* 74 F.3d at 644.  With respect to the claims falling into the category of "conditions of confinement," the court must decide whether the condition is imposed for the purpose of punishment or whether it is incident to some legitimate non-punitive governmental purpose and whether it is excessive in relation to that purpose.  *Bell*, 441 U.S. at 538, 99 S.Ct. at  1873-74.  However, for all detainees, " '[t]here is, of course, a *de minimis* level of imposition with which the  Constitution is not concerned.' "  *Bell,* 441 U.S. at 539 n. 21, 99 S.Ct. at  1874 n. 21 *quoting Ingraham v. Wright*, 430 U.S. at 674, 97 S.Ct. at 1414.

Restraints that are reasonably related to the institution's interests do not, without more, constitute unconstitutional punishment, "even if they are discomforting and are restrictions that the detainee would not have experienced had he been released . . . ." *Bell,* 99 S.Ct. at 1875.   While the *Bell* Court did not detail the precise extent of the legitimate governmental interests that may justify any particular condition, the Court did specifically recognize that "the effective management of the detention facility . . . is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment" and further that the

institution's interest in maintaining jail security and order at the institution, "do not, without more, constitute unconstitutional punishment." *Id*. Likewise, "[t]he protection of inmates and staff is undeniably a legitimate penological interest." *Johnson v. California,* 543 U.S. 499, 534 (2005) *citing Bell*, 441 U.S. at 467-547.  Accordingly, "[p]rison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel. . . ." *Bell,* 441 U.S. at 547. This recognition conforms with the Supreme Court's repeated admonition that it is not the role of federal  courts to second guess prison officials or their decisions regarding effective management, as such considerations are peculiarly within the province and professional expertise of corrections officials.  *See Bell,* 99 S.Ct. 1874-75 and 1875 at fn. 23; *Rhodes,* 101 S.Ct. at 2401-02; *Hudson v. McMilliam*, 112 S.Ct. 995, 999 (1992).

Here, given the highly inflammatory nature of the crimes with which Lavergne had been charged and the widespread media attention given the case, it appears that jail officials placed Lavergne in protective isolation because his safety would be at risk if he were housed with other prisoners, placed in the general population or allowed in the recreation yard alongside general population prisoners.  This decision, and concomitant complained of restrictions, are obviously related to effective prison management and the jail's duty to ensure the safety and protection of inmates, both of which are valid prison objectives.  Accordingly, any inference that such conditions were intended as punishment is dispelled.

Furthermore, the decision to place an inmate such as Lavergne in protective isolation is peculiarly within the province and professional expertise of the Sheriff, and as such is not a decision which this court should second guess.  Finally, it appears that the complained of conditions of confinement constitute "a *de minimis* level of imposition with which the Constitution is not concerned."  *Bell,* 441 U.S. at 539 n. 21, 99 S.Ct. at 1874 n. 21 *quoting Ingraham v. Wright*, 430 U.S. at 674, 97 S.Ct. at 1414.

Furthermore, the Supreme Court has noted that "the length of confinement cannot be ignored" when evaluating a conditions of confinement claim.  *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) *citing Hutto v. Finney*, 437 U.S. 678, 686-87, 98 S.Ct.  2565, 2571 (1978) (Eighth Amendment claim).  In the case at hand, plaintiff complains that the fourth floor was without air conditioning and that for seven to ten days, two or three of which Lavergne was on suicide watch, he was not permitted reading, writing or religious material, or access to television, newspapers or the radio, and was not provided toothpaste and underclothing.  Clearly, such a brief period under the circumstances does not objectively demonstrate that these restrictions constitute unconstitutional punishment. This is so even if the conditions were discomforting and would not have been experienced had Lavergne not been placed in protective isolation.  *See Bell,* 99 S.Ct. at 1875.

In sum, although the conditions of Lavergne's confinement may have been uncomfortable and even harsh, the conditions did not violate the Due Process guarantees

9

of the Fourteenth Amendment.  Accordingly, Lavergne  has failed to set forth a claim upon which relief may be granted and his claims should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[2]

Finally, the decision not to allow Lavergne to have his c-pap machine is likewise without merit.  Analyzed as an episodic act claim, Lavergne must show that he suffered  a sufficiently serious deprivation and deliberate indifference by prison officials.  *Hare*, 74 F.3d at 643 and 650.  With respect to medical care claims, the medical care must be "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *see also Sibley v. LeMaire,* 184 F.3d 481, 489 (5th Cir. 1999);  *Nerren v. Livingston Police Dept.,* 86 F.3d 469 (5th Cir. 1996).  This is the same standard applicable to convicted prisoners under the Eighth Amendment.  *Sibley,* 184 at 489.  A defendant may be deemed deliberately indifferent to a prisoner's health condition only if he knows an inmate faces a substantial risk of serious harm and disregards the risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  The deliberate indifference standard "is an extremely high standard to meet."  *Domino*, 239 F.3d at 756.

---

[2]Moreover,  42 U.S.C. § 1997e(e),  requires a prisoner to show that he has sustained a physical injury in order to bring a prisoner civil action.  Here,  plaintiff fails to allege or demonstrate that he suffered any physical injury whatsoever as a result of his having been incarcerated at the Lafayette Parish Jail.

In light of the above standard, courts have routinely rejected claims based upon the failure of prison officials to provide a c-pap machine in the absence of allegations that the denial caused the inmate substantial harm or constituted a serious risk to the inmate's health.  *Washington v. Thomas*, 264 F.3d 1140 (5th Cir. 2001) (Eighth Amendment claim); *Alfred v. Forcht Wade Correctional Center*, 354 Fed. Appx. 58 (5th Cir. 2009) (same); *Hicks v. Wilkinson*, 2011 WL 2117609 (W.D. La. 2011) (same); *Cooper v. Wilkinson,* 2010 WL 1506918 (W.D. La. 2010) (same); *Ruiz v. Bureau of Prisons*, 2009 WL 4574294, *4 (E.D. Tex. 2009); *Fuselier v. Pacheco*, 2009 WL 1310922, *2 (W.D. La. 2009).

In this case, Lavergne has not met the applicable standard.  Lavergne has not alleged that he suffered from any serious medical need or that the denial of a c-pap machine caused him substantial harm or constituted a serious risk to his health.  To the contrary, Lavergne merely complains that the denial of a c-pap machine caused him "sleep deprivation."   Moreover, Lavergne has not alleged that any defendant was deliberately indifferent to a serious medical need or risk of harm, nor has he alleged  that the defendant was aware of an excessive risk to plaintiff's health or safety, and yet consciously disregarded the risk.  Accordingly, Lavergne  has failed to set forth a claim upon which relief may be granted and his claims should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[3]

---

[3]*See* fn. 2*, supra.*

**IV.  Lafayette Parish Sheriff's Office**

Despite the applicability of *Heck* to Lavergne's claims, Lavergne's claims against the Lafayette Parish Sheriff's Office are additionally subject to dismissal for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii). The Lafayette Parish Sheriff's Office is not a separate legal entity capable of being sued. *See Hicks v. Tarrant County Sheriff's Dept.*, 352 Fed. Appx. 876, 878, 2009 WL 2762378, *1 (5th Cir. 2009) *citing  Darby v. Pasadena Police Dep't,* 939 F.2d 311, 313-14 (5th Cir. 1991);  *Cozzo v. Tangipahoa Parish Council--President Government,* 279 F.3d 273, 283 (5th Cir. 2002) *citing Porche v. Saint Tammany Parish Sheriff's Office,* 67 F. Supp.2d 631, 635 (E.D. La. 1999) *citing  Liberty Mut. Ins. Co. v. Grant Parish*, 350 So.2d 236, 238 (La. Ct. App. 1977); *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La.1988); *Martin . Vernon Parish Sheriff's Office,* 2010 WL 3522076, *9 (W.D. La. 2010); *Guy . Louisiana,* 2013 WL 3816462, *4 (W.D. La. 2013); *Walker v. Iberia Parish Sheriff Department,* 2007 WL 2127706, *1 (W.D. La. 2007) (and cases cited therein).  *See also Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992).

**V.  State Law Claims**

To the extent that Lavergne's allegations may be construed as asserting claims under Louisiana State law, this Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).[4]

---

[4]This Court cannot exercise diversity jurisdiction, over any claims asserted by Lavergne under Louisiana State law because complete diversity is lacking.  For exercise of this Court's diversity

A district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it had original jurisdiction.  28 U.S.C. § 1367(c)(3); *Nowell v. Acadian Ambulance Service*, 147 F.Supp.2d 495, 510 (W.D. La. 2001).  Indeed, when a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.  *Id. citing Bass v. Packwood Hospital*, 180 F.3d 234, 246 (5th Cir. 1999) *citing Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989).  However, the dismissal should be without prejudice.  *Id*.

In light of the above, all federal claims asserted against the defendant will be dismissed.  Accordingly, no federal question will remain before this court.  Accordingly, the undersigned recommends that this Court decline supplemental jurisdiction over any state law claims asserted by Lavergne, dismissing those claims without prejudice.

For the reason set forth above[5];

---

jurisdiction, it is axiomatic that complete diversity is required.  Thus, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action.  *Exxon v. Allapattah*, 545 U.S. 546, 553, 125 S.Ct. 2611, 2617 (2005) *citing Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806) and *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 375, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).  In sum "[i]ncomplete diversity destroys original jurisdiction with respect to all claims" in the action.  *Id.* at 2618.  Here, both Lavergne and the Lafayette Parish Sheriff's Office are Louisiana citizens.  Accordingly, complete diversity is lacking.

[5]Although Lavergne does not seek his immediate release from custody.  The undersigned notes that such relief is not available in a civil rights action. *See Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997); *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973);  *Serio v. Members of the La. State Board of Pardons,* 821 F.2d 1112, 1117 (5th Cir. 1987); *Cook v. Texas Dept. of Criminal Justice Planning Dept*., 37 F.3d 166, 168 (5th Cir. 1994); *Pugh v. Parish of St. Tammany*, 875 F.2d 436, 439 (5th Cir. 1989) (A *habeas corpus* petition is the proper vehicle to seek release from custody); *Muhammad v. Close,* 540 U.S. 749, 750, 124 S.Ct. 1303, 1304 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of *habeas corpus*.").
Further, the undersigned notes that any *habeas corpus* action which Lavergne could file would

**IT IS RECOMMENDED** that Lavergne's civil rights claims directed at actions and conditions which allegedly forced Lavergne to enter a guilty plea to the murders of Pate and Shunick, and for alleged constitutional violations connected with the murder investigation and subsequent state criminal proceeding be **DISMISSED WITH PREJUDICE** subject to reassertion if the requirements of *Heck v. Humphrey* are met.

**IT IS FURTHER RECOMMENDED** that plaintiff's civil rights jail conditions claims be **DISMISSED WITH PREJUDICE** for failure to state claims upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

Alternatively, **IT IS RECOMMENDED** that Lavergne's civil rights claims against the Lafayette Parish Sheriff's Office be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

---

most probably be dismissed for failure to properly and fully exhaust state court remedies. *See* 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Minor v. Lucas*, 697 F.2d 697 (5th Cir. 1983); *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999);  *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of each of his claims to the state courts in a procedurally proper manner. *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).  Moreover, each claim must be presented to the state's highest court, even when review by that court is discretionary.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728 (1999);  *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998) *citing Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985).  In Louisiana, the highest court is the Louisiana Supreme Court.  *See also*, 28 U.S.C. § 2254(b)(1). Nothing suggests that Lavergne has exhausted his state court remedies by fairly presenting his federal claims to the Louisiana Supreme Court in a procedurally correct manner.

**IT IS FURTHER RECOMMENDED** that Lavergne's claims under Louisiana State law be **DISMISSED WITHOUT PREJUDICE.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Lafayette, Louisiana, February 12, 2014.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE